Plaintiff herein has appealed from a judgment in the district court which rejected his demand for compensation against the defendant and dismissed his suit. He had been granted an order by the court to prosecute his demand under the benefit of Act 156 of 1912, as amended by Act No. 260 of 1918, § 1, and known as the Pauper Act, under the provisions of which he was relieved from the payment of costs and furnishing an appeal bond.
He was formerly employed by the defendant lumber company in various capacities and on or about January 18, 1939, when he claims to have suffered an accident which gave rise to his demand for compensation, was engaged in the duties of night watchman. On that night, he alleges, that while making his rounds, he walked over a raised platform or runway and the planks gave away under his weight as a result of being decayed and he fell through the opening thus made to the ground, a distance of about five feet. He avers that he landed in a cramped and strained position and the fall caused a hernia to develop in his left groin. He then sets out that within less than six months he reported his injury to his foreman but the latter accused him of trying to perpetrate a fraud upon his employer so he continued to work until July 6, 1939. He alleges that all the while he worked after his injury he suffered continuously and that he still suffers and has become permanently and totally disabled to do work of a reasonable character. He does not allege specifically what his average weekly wage was while he worked but claims to be entitled to compensation at the rate of $15.47 per week and in addition, prays for $250 for medical fees.
The defendant, for answer, admits plaintiff's employment but denies all the allegations *West Page 61 
of his petition relating to the accident and injury he claims to have suffered and that he ever complained of a hernia or of any injury causing him incapacity to work. Further answering defendant sets out that during the night beginning July 5, 1939, and ending with the morning of July 6, 1939, plaintiff, whose duties required him to make regular rounds at intervals of one hour each over the territory he guarded and punch the time clock which he carried with him with keys permanently attached to different posts and parts of the buildings, removed at least one of the said posts with the key attached to it from the ground and replaced it about a quarter of a mile away so that he could punch his time clock without having to make his rounds in the designated manner. This, it is averred, was in violation of the rules and regulations of his employment, as he well knew, and that upon discovery of his action he was promptly notified that his services would be no longer required upon completion of his rounds on the morning of July 6, 1939. As a further defense, in the alternative, defendant avers that if plaintiff is suffering with a hernia, as long ago as in the year 1937 he claimed to have had one and that if it existed at that time it has in no way been aggravated while he was in its employ.
The trial judge filed no written opinion in the record but regardless of the reasons on which he based his judgment, we think that he correctly rejected the plaintiff's demand.
Plaintiff testifies in substance that during the early part of the morning of January 19, 1939, while engaged in his duties as night watchman, he was walking on a runway or platform adjoining a drying kiln and that a plank gave away under his weight and he fell into the hole against one of the rotten sills in front of him. He experienced a little pain and a stinging sensation immediately in his groin and noticed also that he had a cut on his left leg. He went to the boiler room where a small first aid kit was kept and painted the cut with iodine. He then resumed his work and did not report his accident until the night of January 29, 1939, when he told Mr. Charles Hare, the defendant's superintendent, about it. Apparently nothing was done about the matter as he continued to work until July 6, 1939, when he was discharged. It was only after that that he consulted a doctor.
To corroborate his testimony regarding the time of the accident plaintiff called a witness by the name of Valentine Reeves who was also employed as night watchman by the defendant company. He recalls a conversation between them during the month of January, 1939, during which plaintiff told him about a fall he had had and having sustained an injury. Plaintiff told him that he had hurt his leg and also felt that he had a rupture. When asked if he could recall during that conversation the time at which plaintiff told him he had sustained the hernia, he says: "I understood him to say back before Christmas or somewhere around there." He says that plaintiff continued to perform his duties after they had had that conversation and that he observed no difference in the manner he did his work.
J.W. Cabler, another witness, called by plaintiff and who was also employed by the defendant, as an engineer, stated that two months before his discharge plaintiff told him that he had skinned his shin when he stepped in a hole and showed him the skin abrasions on his leg.
Charles Hare, called as a hostile witness under the cross-examination statute, testifies that plaintiff never complained to him about having a hernia until some two or three days after his discharge on July 6, 1939.
The foregoing comprises practically all the proof offered and submitted by the plaintiff to show that during the night beginning January 18, 1939, as he contends, he had an accident which caused him to have a hernia develop on his left side. It is unconvincing, in the first place, of his having sustained any accident at all at that time and secondly, conceding that he is at present suffering with a hernia, that it was caused by an injury sustained by him at any time while he was in the employ of the defendant. Dr. DeLoach Thomas, the physician he consulted after his discharge in July, 1939, stated that his examination of the plaintiff lasted about ten minutes, that he found him suffering with a small hernia but was unable to tell whether it was of traumatic or congenital origin. He is of the opinion that had it been sustained from trauma as plaintiff claims, at the time of his fall, the pain would have been far more severe than what he felt and more likely than not, he could not have continued to work as he did.
Plaintiff's counsel complain of the ruling of the district judge in refusing to let his client exhibit his person to the court *West Page 62 
to show that he had injured his leg in the fall and that he had a hernia. That however was a matter which was within the discretion of the trial judge who may have thought that such a procedure would neither add to nor detract from the proof. The only purpose could have been to show the scars, if any, from the wound on the leg and the location of the hernia. Exhibiting these could have in no manner, as we can see, assisted the court in determining the time of the occurrence which caused them and under the facts and circumstances otherwise appearing we do not know what useful purpose could have been served. We do not think therefore that there was a misuse of his discretion by the district judge in this respect.
We find it unnecessary to discuss in this opinion the reasons for plaintiff's discharge on July 6, 1939. He admits that it was for a serious infraction of the rules and regulations under which he had to perform his duties. Regardless whether that was a motive which prompted his demand for compensation or not we are convinced that he has failed to support his claim by competent proof and the judgment of the lower court which rejected his demand and dismissed his suit is correct.
Judgment affirmed.